IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| GILMER RANDALL BRADY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:06CV00203 |
| ) | |
| CITY OF GREENSBORO, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

MEMORANDUM OPINION

Tilley, Chief Judge

This case arises out of a dispute between Plaintiff Gilmer Randall Brady and Defendant City of Greensboro (the "City") over Mr. Brady's right to receive certain retirement benefits from the City. It is now before the Court on Mr. Brady's Motion for Judgment on the Pleadings [Doc. # 8]. For the reasons set forth below, Mr. Brady's motion will be GRANTED.

I.

The facts in the light most favorable to the nonmoving party are as follows: N.C. Gen. Stat. § 143-166.41(a) provides that every law enforcement officer employed by the State and meeting certain qualifications shall, upon retirement, receive a "Special Separation Allowance" (the "Allowance"). The amount of the Allowance is determined by the officer's number of years of service multiplied by eighty-five hundredths percent (0.85%) of the officer's annual compensation. The

statute sets forth the following eligibility requirements for the Allowance:

> (1) Have (i) completed 30 or more years of creditable service[1] or, (ii) have attained 55 years of age and completed five or more years of creditable service; and
> (2) Not have attained 62 years of age; and
> (3) Have completed at least five years of continuous service as a law enforcement officer . . . immediately preceding a service retirement. . . .

N.C. Gen. Stat. §§ 143-166.41(a)(1), (2) & (3). In 1986, the North Carolina General Assembly enacted § 143-166.42 which extended the Allowance benefits to law enforcement officers employed by local government employers. See id. § 143-166.42. Thus, law enforcement officers employed by local governments are eligible for the Allowance in addition to any retirement benefits they may receive through the North Carolina Local Government Employees' Retirement System. Id.

Mr. Brady joined the Greensboro Police Department in March of 1981 and retired from the Department on December 1, 2005. Shortly before his retirement, Mr. Brady was interviewed in conjunction with an investigation into allegations of misconduct by the Greensboro Police Department. At the time, Mr. Brady was serving as Deputy Chief of Police for the Department.

On November 29, 2005, Mr. Brady completed an Application for Retirement to the North Carolina Local Government Employees' Retirement System, effective

---

[1] "Creditable service" is defined as "the service for which credit is allowed under the retirement system of which the officer is a member, provided at least fifty percent (50%) of the service is as a law enforcement officer . . . ." N.C. Gen. Stat. § 143-166(b).

2

December 1, 2005.  The City accepted Mr. Brady's Application for Retirement and forwarded it to the Department of State Treasurer, Retirement Systems Division, in Raleigh, North Carolina.  The Department of State Treasurer subsequently found that Mr. Brady was entitled to retirement benefits from the Local Government Employees' Retirement System.

In its 2005 Employee Benefits Book and Health Plan Comparison, the City sets forth the eligibility requirements for the Allowance as follows:

> The City of Greensboro, like all local governments in North Carolina, has been mandated by the NC General Assembly to provide a special separation allowance to sworn police officers who meet the following requirements:
>
> retire within 30 years of service in the NC Local Governmental Employees' Retirement System, the last five of which were spent in a sworn law enforcement officer's statutes
>
> OR
>
> retire at age 55 in the NC Local Governmental Employees' Retirement System with the last five years of service in a sworn law enforcement officer's status.
>
> If you qualify for this benefit, the City will pay you, in semi-monthly installments, .85% of your final base salary times the number of years service you have in the retirement system.  For example, if you retired with 30 years of creditable service in the Retirement System and at least the last five were as a sworn officer, the City will pay you an amount equal to 25% of your final base salary.  This separation allowance will be paid to you through the month in which you reach age 62.

(Am. Compl., Ex. B.)  In addition, shortly after his retirement, Mr. Brady received a memo from Michele Taley, Benefits Specialist for the City of Greensboro, setting

3

forth the same eligibility requirements for the Allowance.[2]  (Am. Compl., Ex. D.)

Mr. Brady was born on December 7, 1954 and was therefore 50 years old at the time of his application for retirement.  In addition, Mr. Brady had 30.3332 years of creditable service and had completed five years of continuous service as a law enforcement officer.  However, on December 6, 2005, Connie Hammond, Director of Human Resources for the City of Greensboro sent Mr. Brady a letter acknowledging receipt of his retirement application and stating that:

> The City has received and will process your retirement application. However, any City controlled benefits, including but not limited to vacation, sick leave and Special Separation Allowance, will be held in abeyance until such time as the inquiry into the Police Department's policies and practices is complete.  Finally, your health insurance benefits will be maintained at the same level until the aforementioned inquiry is concluded.

(Am. Compl., Ex. E.)  To date, Mr. Brady has not received any Allowance payment from the City.

---

[2] In the memo, Ms. Taley summarizes the eligibility requirements for the Allowance as follows:

> The State of North Carolina requires municipalities to supplement police officers' retirement benefit until they reach the age of 62.  This legislation indicates eligible police officers must have retired with 30 years of creditable service, or be a minimum of 55 years of age and have at least five years of creditable service in the Local Government Retirement System.  This benefit is voided if the retired officer returns to any type employment with a local government. . . . It should also be noted the Special Separation Allowance is not awarded to officers who do not meet the above-denoted stipulations. . . . Employees who retire outside the stated provisions do not receive the Special Separation Allowance or any portion thereof. . . .

(Am. Compl., Ex. D.)

4

Mr. Brady filed the present case in Guilford County Superior Court on February 6, 2006, seeking declaratory and injunctive relief.  Mr. Brady claims that the City's failure to pay him the Allowance is a violation of his due process rights under the Fourteenth Amendment and requests an injunction requiring the City to begin payment of the Allowance.[3]  The City removed the case to the United States District Court for the Middle District of North Carolina on March 1, 2006 [Doc. # 1].  Mr. Brady filed an Amended Verified Complaint on March 3, 2006 [Doc. # 5] and the City filed its Answer on March 14, 2006 [Doc. # 6].  Mr. Brady moved for Judgment on the Pleadings on April 5, 2006 [Doc. # 8] and the City filed its Response in Opposition on April 24, 2006 [Doc. # 16].  Mr. Brady filed his Reply on May 4, 2006 [Doc. # 20].  On June 21, 2006, the Court requested that the parties submit further briefing [Doc. # 21] and both parties complied [Doc. #s 24, 25 & 26].  On August 1, 2006 the North Carolina Court of Appeals released <u>Wiggs v. Edgecombe County</u>, 632 S.E. 2d 249 (2006) (holding the municipality's threatened cessation of special allowance payments to retired officer violated  N.C. Gen.Stat. § 143-166.42  when the municipality had not enacted a resolution adopting the policy upon which it proposed to base termination of payments prior to vesting of the officer's right to receive the allowance).

---

[3] The City paid Mr. Brady his outstanding vacation pay upon his retirement.  In addition, Mr. Brady's unused sick leave was used to determine additional retirement credits in accordance with the rules of the North Carolina Local Government Employees' Retirement System.  Thus, Mr. Brady does not contend that he has been denied these benefits.

II.

A party is entitled to judgment on the pleadings when there is no genuine issue of any material fact and the case can be decided as a matter of law. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is designed to test the legal sufficiency of the complaint and "will operate to dispose of claims where the material facts are not in dispute and judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." Davenport v. Robert H. Davenport, D.D.S., M.S., P.A., 146 F. Supp. 2d 770, 783 (M.D.N.C. 2001). When considering a motion for judgment on the pleadings pursuant to Rule 12(c), the pleadings must be read in the light most favorable to the nonmoving party. Edwards v. City of Goldsboro, 178 F.3d 231, 248 (4th Cir. 1999).

III.

Mr. Brady contends that he is eligible to receive the Allowance provided for in N.C. Gen. Stat. §§ 143-166.41-42 because he has met the three requirements for eligibility set forth in the relevant statute, the City's Employee Benefits Book, and Ms. Taley's memo: Mr. Brady has completed more than 30 years of creditable service, had not attained the age of 62 at the time of his retirement, and had completed at least five years of continuous service immediately preceding his retirement. The City does not contest that Mr. Brady has met these three requirements. Instead, it contends that these are not the only eligibility

6

requirements for the Allowance, (see Answer ¶¶ 16, 16a), and asserts that there is an additional eligibility requirement for the Allowance:

> Acting under its authority, the City has determined that officers are not eligible for the Allowance if they engage in misconduct that is serious enough to cause dismissal from the Department and has decided that the plaintiff's entitlement to the Allowance will not be determined until the investigation into his conduct prior to his "retirement" has been completed.

(Def.'s Resp. 3.) Thus, according to the City, the reason Mr. Brady is not currently eligible for the Allowance is that officers who have been terminated as a result of misconduct are not eligible for City benefits, including the Allowance. (Answer, Second Further Defense, 5-6.)

Significantly, Mr. Brady was not terminated from the Greensboro Police Department. Rather, he submitted his application for retirement to the City effective December 1, 2005.[4] Therefore, the City essentially claims not only that officers who *have been* terminated as a result of misconduct are not eligible for the Allowance, but that officers who *could have been* terminated for misconduct are

---

[4] In its Supplemental Response Brief, the City contends that it "has no authority to accept or reject the plaintiff's [retirement] application." (Def.'s Supp. Resp. 4.) Rather, "[a]ll the City did was perform the required and perfunctory task of forwarding the plaintiff's application for retirement to the Board of Trustees of the Local Government Employees' Retirement System . . . ." (Id.) However, the result of this action was that the Department of State Treasurer, Retirement Systems Division, found that Mr. Brady was entitled to retirement benefits from the Local Government Employees' Retirement System as of Dec. 1, 2005. (Am. Compl. ¶¶ 4, 6; Answer ¶¶ 4, 6.) Moreover, the City admits that Mr. Brady would have begun receiving the Allowance as of Dec. 1, 2005 "if he had been determined to be eligible." (Answer ¶ 25.) Thus, whether or not the City had "authority" to accept or reject Mr. Brady's retirement application, the fact is that Mr. Brady retired as of Dec. 1, 2005.

7

not eligible for the Allowance. The City also reserves the right to determine whether an officer could have been terminated for misconduct even after the officer has retired from his position.

In <u>Wiggs v. Edgecombe County</u>, the North Carolina Court of Appeals held that through the enactment of § 143-166.42, "the General Assembly gave the governing body for each local government the discretion to act or not to act" as far as creating additional eligibility requirements for the Allowance beyond those set forth in § 143-166.41. 632 S.E.2d 249, 253 (N.C. Ct. App. 2006). However, if the local government chose to create additional eligibility requirements for the Allowance, it had an "affirmative duty to enact a resolution" setting forth these requirements. <u>Id.</u> Significantly, in the present case, the City has not pointed to any city resolution, handbook, or memo where it is stated that an officer who could have been terminated for misconduct is not eligible for the Allowance.

The <u>Wiggs</u> court also found that § 143-166.42 created a contractual obligation between the state and law enforcement officers employed by local government employers. <u>Id.</u> at 254 (citing <u>Simpson v. N.C. Local Gov't Employees' Retirement Sys.</u>, 363 S.E.2d 90, 94 (N.C. Ct. App. 1987)). In so holding, the court noted that:

> [W]hen the General Assembly enacted laws which provided for certain benefits to those persons who were to be employed by the state and local governments and fulfilled certain conditions, this could reasonably be considered by those persons as offers by the state or local government to guarantee the benefits if those persons fulfilled the conditions.

632 S.E.2d at 254 (citing Faulkenbury v. Teachers' & State Employees' Retirement Sys., 483 S.E.2d 422, 427 (N.C. 1997)). Because the statute creates a contractual obligation, a local government cannot impair that obligation unless it is "reasonable and necessary to serve an important public purpose."[5] Wiggs, 483 S.E.2d at 254 (citing Simpson, 363 S.E.2d at 94); see also Bailey v. State, 500 S.E.2d 54, 60 (N.C. 1998) (citing U.S. Trust Co. of N.Y. v. New Jersey, 431 U.S. 1 (1977)).

In Wiggs, the defendant local government enacted a resolution providing for additional eligibility requirements for the Allowance after the retirement of the plaintiff. 483 S.E.2d at 251. The plaintiff had been receiving the Allowance for several months when the defendant informed him that he was no longer eligible for the Allowance under the terms of the recently enacted resolution. Id. The court found that the defendant could not apply the new eligibility requirements to the plaintiff without impairing an obligation of contract. Id. at 254.

In the present case, the City has not pointed to any resolution in existence as of the date of Mr. Brady's retirement, Dec. 1, 2005, providing that an officer who could have been terminated for misconduct prior to his retirement is not eligible for the Allowance. Therefore, the City impaired the contractual obligation created by § 143-166.42 in failing to pay Mr. Brady the Allowance. See id.

---

[5] In Wiggs, the court found the defendant's violated both Article I, § 10 of the United States Constitution and Article I, § 19 of the North Carolina Constitution. 483 S.E.2d at 255.

9

If a court finds that there has been an impairment of contract, it must then determine whether the impairment was reasonable and necessary to serve an important public purpose. Id. (citing Simpson, 363 S.E.2d at 94); see also Bailey, 500 S.E.2d at 66 ("Through the exercise of its police power, a state may constitutionally impair its contractual relations to protect the general welfare of its citizens, so long as such impairment is reasonable and necessary to serve an important public purpose.") (citing U.S. Trust Co., 431 U.S. at 25-26). The City contends that there is "a very important public interest to be served in this case: the punishment of officers who misuse their office for improper purposes." (Def.'s Supp. Resp. 7.) However, while it is clear that the punishment of officers who misuse their office is important, it is not clear that the method chosen by the City was reasonable or necessary to achieve its asserted interest. For example, the City had all necessary information pertinent to Mr. Brady's retirement eligibility dates and could have passed a resolution prohibiting a person under investigation from being eligible to receive the Allowance until the investigation has been completed and the person has been exonerated. See Bailey, 500 S.E.2d at 67 ("There are numerous ways that the State could have achieved this goal without impairing the contractual obligations of plaintiffs."). Thus, the City impaired Mr. Brady's contractual rights through a means that was not reasonable or necessary to serve an important public purpose.

It is undisputed that Mr. Brady has satisfied the three requirements for the

10

Allowance set forth in N.C. Gen. Stat. § 143-166.41(a) and the City's Employee Benefits Book.  Therefore, because the City had not published any other requirements for the Allowance at the time of Mr. Brady's retirement, its decision to deny Mr. Brady the Allowance constitutes an impairment of contract.  As this impairment was not reasonable or necessary to serve an important public purpose, the City will be ordered to pay Mr. Brady the Allowance benefits.

IV.

For the foregoing reasons, Mr. Brady's Motion for Judgment on the Pleadings [Doc. # 8] will be GRANTED.

This the day of February 7, 2007

    /s/ N. Carlton Tilley, Jr.
United States District Judge